**Alonzo WOODS, Petitioner–Appellant,**

**v.**

**Robert KUHLMANN, Superintendent of Sullivan Correctional Facility; Robert Abrams, Attorney General of the State of New York, Respondents–Appellees.**

No. 1381, Docket 92–2025.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1992.

Decided Oct. 13, 1992.

Richard Joselson, New York City (Philip L. Weinstein, Frank A. Brady, The Legal Aid Soc., New York City, of counsel), for petitioner-appellant.

Sholom J. Twersky, Asst. Dist. Atty., Brooklyn, N.Y. (Charles J. Hynes, Dist. Atty. for Kings County, Jay M. Cohen, Asst. Dist. Atty., Brooklyn, N.Y., of counsel) for respondents-appellees.

Before: MESKILL, Chief Judge,
NEWMAN and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Petitioner appeals from an order of the United States District Court for the Eastern District of New York, Charles P. Sifton, *Judge*, denying a petition for a writ of habeas corpus. Petitioner claims he was denied a public trial in violation of his rights under the sixth and fourteenth amendments. The order of the district court is affirmed.

## BACKGROUND

In 1987, Woods was convicted of robbery in the first degree, N.Y. Penal Law § 160.-15(3), in the Supreme Court of the State of New York, Kings County, before Justice Anne Feldman. A witness for the People, one Hazel Neal, was to testify that she observed Woods inflict violence upon the victim. Prior to calling her to testify, the prosecutor requested a conference with Justice Feldman and Woods' attorney in the judge's chambers. The prosecutor informed the judge of the following:

> I asked for this conference in your chambers, your Honor, to put on the record the fact that in the process of talking to my witness preparatory to her going on this morning, she informed me that—suddenly she clammed up and once again went into her refusal to testify, being very upset because she had just seen the defendant's family, among whom she said was one of the people who had visited her at her house.

. . . .

I put this on the record earlier. At the time it was by one person. Now it is by at least two, she tells me, connected with or in fact members of the defendant's family.

. . . [S]he knows the family and she knows the people in the neighborhood. She is now scared to death.

. . . .

[They came] to her telling her she had better not testify, she had better not go to court.

In light of this, the prosecutor requested that the "witness not be subjected to have to testify in the presence of people who have threatened her or at least who have been connected with the threat, whom she is very afraid of."

Justice Feldman asked defense counsel to obtain the names of the family members who were in the courtroom that morning and their relationship to the defendant, Woods. Counsel informed her that three of the defendant's family members were in the courtroom—Constance Wright, Woods' common law wife; Dawn Wright, Constance Wright's sister; and Curtis Williams, Woods' cousin. Defense counsel then asked the court to ask the prosecutor to try to elicit from Neal which member of the family had approached her.

Justice Feldman, however, did not feel that this was necessary because "if [the family] came [to court] together and they are sisters, one is in the courtroom and she will tell the other. . . . [Since the defendant] is not going on the stand[,] [i]f they are here now[,] they are here to hear the People's witnesses." Therefore, based upon the representations made by the prosecutor, the trial judge decided to exclude all members of Woods' family during Neal's testimony. "As soon as the witness finishes," the judge determined, "the family may enter the courtroom. . . ." Defense counsel objected to the exclusion of these persons from the courtroom.

Immediately before Neal testified, Justice Feldman asked Neal if it was true that she was reluctant to testify because of "certain fears" that she had for the safety of herself and her family. Neal responded, "Yes." The judge then informed Neal that the courtroom had been cleared of Woods' family and that they had been warned of the grave implications of "bothering a witness who wants to come forward and testify." The jury was then brought in and Neal testified.

As noted, Woods was convicted of robbery in the first degree, N.Y. Penal Law § 160.15(3). On August 31, 1987, he was sentenced to an indeterminate term of imprisonment of eight to sixteen years. Following his conviction and sentencing, Woods appealed to the Appellate Division, Second Department, arguing, *inter alia*, that he had been denied the right to a public trial by the exclusion of his family from the courtroom during the testimony of Neal. Woods maintained that the exclusion based solely upon the prosecutor's representation that the witness had "clammed up," was erroneous and, consequently, his conviction should be reversed and a new trial ordered. In opposition, the People maintained that the court's limited exclusion of the defendant's family was proper in order to insure "Neal's accurate testimony."

The Appellate Division affirmed the conviction, concluding that sufficient facts had been placed before the trial judge to justify the closure of the courtroom to Woods' family during the testimony of the witness. *People v. Woods*, 156 A.D.2d 609, 610, 549 N.Y.S.2d 116, 117 (2d Dep't 1989). Woods applied for leave to appeal to the New York Court of Appeals; the application was denied. *People v. Woods*, 75 N.Y.2d 971, 555 N.E.2d 628, 556 N.Y.S.2d 256 (1990) (Alexander, J.).

Thereafter, pursuant to 28 U.S.C. § 2254, Woods filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. In his memorandum in support of his petition, Woods maintained that he had been deprived of his right to a public trial by the state court's closure order, which, he maintained, failed to satisfy three of the four requirements of *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31

(1984). Respondents opposed the petition, arguing that the state trial judge had fully complied with *Waller.* In a memorandum and order dated December 9, 1991, the district judge denied Woods' petition, holding that the limited closure of the trial was justified and had not violated Woods' right to a public trial. This appeal followed.

## DISCUSSION

■ In *Waller v. Georgia,* the Supreme Court addressed the breadth of a criminal defendant's rights under the sixth and fourteenth amendments to insist upon a public trial. The sixth amendment provides, *inter alia,* that a defendant shall enjoy "the right to a speedy and public trial." In *Waller,* the Court recognized that the central aim of a criminal proceeding is to try the accused fairly. *See* 467 U.S. at 46, 104 S.Ct. at 2215. The Court noted that, to that end, a public trial allows the public to see for itself that the accused is fairly dealt with and not unjustly condemned. Moreover, a public trial ensures that judges, prosecutors and witnesses carry out their respective duties with a keen sense of the importance of their functions. *Id.* at 46, 104 S.Ct. at 2215.

The *Waller* Court also recognized, however, that the right to a public trial is not absolute, and in some instances must yield to other interests, such as those essential to the administration of justice. *Id.* at 45, 104 S.Ct. at 2214. To ensure that the proper balance of interests is struck, the Court adopted the following requirements: 1) a party seeking to close a court proceeding must advance an overriding interest that is likely to be prejudiced; 2) the closure must be no broader than necessary to protect that interest; 3) the trial court must consider reasonable alternatives to closing the proceeding; and 4) it must make findings adequate to support the closure. *Id.* at 48, 104 S.Ct. at 2216.

In applying *Waller* to the instant case, we note a significant difference. *Waller* dealt with the *total closure* of a suppression hearing in which *all* persons other than witnesses, court personnel, the parties and their lawyers were excluded for the duration of the hearing. *Id.* at 42, 104 S.Ct. at 2213. The case herein, however, deals with a *partial closure* of a trial in which only members of the defendant's family were excluded and then only for the duration of one witness' testimony. Although this Circuit has not had the opportunity to address *Waller* in this context, the Ninth, Tenth and Eleventh Circuits have done so and have concluded that when a trial judge orders a partial, as opposed to a total, closure of a court proceeding at the request of one party, a "substantial reason" rather than *Waller*'s "overriding interest" will justify the closure. *See, e.g., United States v. Sherlock,* 962 F.2d 1349, 1357 (9th Cir.) (since substantial reason, rather than compelling interest, was necessary and had been articulated, defendant's right to a public trial had not been violated), *petition for cert. filed,* No. 92–5433 (U.S. July 27, 1992); *Nieto v. Sullivan,* 879 F.2d 743, 753 (10th Cir.) (same), *cert. denied,* 493 U.S. 957, 110 S.Ct. 373, 107 L.Ed.2d 359 (1989); *Douglas v. Wainwright,* 739 F.2d 531, 533 (11th Cir.1984) (per curiam) (same), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985).

■ These courts reasoned that a less stringent standard was justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does. *See Sherlock,* 962 F.2d at 1357–58; *Nieto,* 879 F.2d at 753–54; *Douglas,* 739 F.2d at 533. We agree. We, too, are persuaded that we should apply the less stringent "substantial reason" test to determine whether a defendant's right to a public trial was violated by a partial closure of the proceedings.

In the instant case, the prosecutor explained to the trial judge that Neal was "scared to death" because she had been threatened by at least one member of the defendant's family. There can be little doubt that "[i]n some instances, the safety of a witness will certainly be an *overriding interest,* especially in cases involving ... witnesses whose lives have been threatened." *Ip v. Henderson,* 710 F.Supp. 915, 918 (S.D.N.Y.) (emphasis added), *aff'd without opinion,* 888 F.2d 1376 (2d Cir.

1989). Furthermore, petitioner, in his briefs both to this Court and the district court, effectively concedes that protection of a witness who claims to be frightened as a result of perceived threats meets both the "substantial reason" and the "overriding interest" standards. Therefore, in lieu of *Waller*'s "overriding interest" requirement, we conclude that the trial court herein had a "substantial reason" to temporarily exclude the members of the petitioner's family during Neal's testimony. Furthermore, we conclude that the trial court complied with the remaining requirements of *Waller.*

We turn to whether the partial closure was narrowly tailored to exclude spectators only to the degree necessary to satisfy the objective for which it was ordered. *Sherlock,* 962 F.2d at 1358; *see Waller,* 467 U.S. at 45, 104 S.Ct. at 2214. Woods maintains that by failing to interview Neal personally, the judge was unable to adequately assess the scope of the interest sought to be protected and therefore issued a closure order broader than was necessary.

Although Justice Feldman did not conduct an extensive interview with Neal, the judge did ask her if it was true that she was reluctant to testify because she feared for the safety of herself and her family. Neal responded, "Yes." While this exchange may not have been exhaustive, we do not doubt that by hearing her answer and observing her demeanor during this exchange, the judge was able to adequately determine for herself the scope of Neal's fear of the petitioner's family. Moreover, the judge had the benefit of the previous in-chambers conference with the prosecutor and Woods' attorney.

Having determined that the trial judge adequately assessed the scope of Neal's fear, we disagree with Woods' contention that the closure order was broader than necessary. Woods argues that an order excluding only the offending family member may well have assuaged Neal's anxiety about testifying. By excluding his entire family, Woods maintains, the judge failed to narrowly tailor the closure order. However, as the record reveals, Justice Feld-

man considered, but dismissed as ineffective, the possibility of removing only the family member who threatened Neal because the remaining family members could "tell the other" of the substance of Neal's testimony. Further, once Neal's testimony was concluded, the family was allowed to re-enter the courtroom. In our view, the closure order was no broader than was necessary to enable Neal to testify, while otherwise allowing the public to attend the trial if it chose to do so. *See Sherlock,* 962 F.2d at 1358.

Woods next contends that the trial judge failed to consider any alternatives to the partial closure. Woods reiterates that the judge should have considered excluding only the member of the family who, in fact, threatened Neal. As explained above, this alternative ignores the trial court's conclusion that Woods' other family members could have informed the excluded family member of the substance of Neal's testimony. Furthermore, according to the prosecutor, Neal's fear stemmed not just from seeing the purported source of the threat, but from seeing the entire family. This being so, excluding one family member would not have alleviated Neal's fears. Moreover, Woods' contention that the trial judge could have simply admonished the defendant's family, while arguably an alternative, hardly seems a reasonable one in light of the prosecutor's statement that Neal was "scared to death" to testify and had "clammed up" at the mere sight of defendant's family.

The Supreme Court's final requirement is that the trial court make findings adequate to support the closure. The purpose of this requirement is to allow a "reviewing court [to] determine whether the closure order was properly entered." *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215 (quoting *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984)). In light of the information gleaned both from the conference held in chambers with the judge, prosecutor and defense counsel, and from the short exchange between the judge and Neal, we conclude that the record is

**78**

sufficient to support the partial, temporary closure of petitioner's trial.

Accordingly, we find that the petitioner's sixth amendment right to a public trial, as applied to the states through the fourteenth amendment, was not violated by the state trial judge's temporary exclusion of petitioner's family during the testimony of one witness.

## CONCLUSION

The order of the district court is affirmed.