*1447
 
 OPINION
 

 Per Curiam:
 

 In the early morning of December 20, 1992, Derrick Hamilton (Hamilton) and his girlfriend Tira Miller (Miller) were sitting in Hamilton’s car in an apartment complex parking lot. Two men came from another apartment building in the same complex; Miller identified one of the individuals as the defendant, Doneale Lamone Feazell (Feazell). The two men got into a van and reversed the van so that it blocked Hamilton’s car. Feazell walked over to Miller and Hamilton. Miller thought that the van had stalled out and that they needed jumper cables. Hamilton rolled down his window, and Feazell pulled a pistol from his pocket and said “Nigger, this is a jack, don’t move.”
 
 [1]
 
 Feazell then shot Hamilton. Hamilton managed to drive away, jumping curbs and sidewalks, until the car collided into the apartments across the street. Hamilton died soon after the shooting. At trial, the jury found Feazell guilty of attempted robbery with use of a deadly weapon and first-degree murder with use of a déadly weapon. The jury sentenced him to death.
 

 Feazell appeals, alleging (1) that he was denied his First, Sixth and Fourteenth Amendment rights when the district court excluded certain African-American males from the courtroom during Miller’s testimony and (2) that the district court erred when it permitted the jury to find two aggravating circumstances.
 

 We turn first to Feazell’s contention that he was denied his right to a public trial. At trial, Miller refused to testify unless the district court excluded four young African-American men whom she felt posed a threat to her personal safety. Miller’s legal counsel
 
 [2]
 
 argued that “her safety would override any interest they [the four young African-American men] have in watching this trial.” Miller felt threatened because she had received two telephone calls telling her not to testify and because somebody had
 
 *1448
 
 left a dead bird in a plastic bag on her patio. Miller peeked through a crack in a courtroom door and told the district court which individuals she did not want in the courtroom while she testified. Per her instructions, the district court excluded the four men.
 

 The Sixth Amendment provides that a criminal defendant shall enjoy “the right to a speedy and public trial.” In Waller v. Georgia, 467 U.S. 39 (1984), the United States Supreme Court recognized that “the central aim of a criminal proceeding must be to try the accused fairly.”
 
 Id.
 
 at 46. A public trial ensures that the judge and the prosecutor “carry out their duties responsibly” and “encourages witnesses to come forward and discourages perjury.”
 
 Id.
 

 The Court further acknowledged, however, that the Sixth Amendment right to a public trial “may give way in certain cases to other rights or interests.”
 
 Id.
 
 at 45. The Court directed trial courts to balance the defendant’s right to a public trial against other interests implicated by a closed trial. Thus, before a trial court can exclude the public from trial proceedings, the following requirements must be met: (1) “the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced”; (2) “the closure must be no broader than necessary to protect [the overriding] interest”; (3) “the trial court must consider reasonable alternatives to closing the proceeding”
 
 [3]
 
 ; and (4) “the trial court must make findings adequate to support the closure.”
 
 Id.
 
 at 48.
 

 The United States Court of Appeals for the Second Circuit has implied that “protection of a witness who claims to be frightened as a result of perceived threats” meets Waller’s “overriding interest” standard. Woods v. Kuhlmann, 977 F.2d 74, 76-77 (2d Cir. 1992). Reasoning that
 
 Waller
 
 involved a total closure of the proceedings, courts addressing this issue apply a different standard in cases such as the one at bar, where the trial judge only partially closes the proceedings.
 
 See, e.g. ,.
 
 United States v. Sherlock, 962 F.2d 1349 (9th Cir. 1992); Nieto v. Sullivan, 879 F.2d 743 (10th Cir. 1989); Douglas v. Wainwright, 739 F.2d 531 (11th Cir. 1984). If a district court only partially closes the proceedings, it is appropriate to “apply the less stringent ‘substantial reason’ test to determine whether a defendant’s right to a public trial was violated.”
 
 Kuhlmann,
 
 977 F.2d at 76.
 

 Miller’s interest in her personal safety qualifies as both a “substantial reason” and an “overriding interest” sufficient to
 
 *1449
 
 justify partially closing the trial. Applying the
 
 Waller
 
 test, (1) the district court recognized an overriding interest; (2) the closure was no broader than necessary to protect that interest
 
 [4]
 
 ; (3) Feazell does not argue that the district court failed to consider reasonable alternatives; and (4) there were sufficient findings
 
 (i.e.,
 
 that Miller had received several threats and was concerned for her safety) to support the decision. Feazell’s right to a public trial was not violated.
 

 Next, Feazell argues that the jury incorrectly found two aggravating factors in sentencing him to death.
 

 First, Feazell contends that the “conviction for robbery is unconstitutional on its face” because the district court, the prosecutor, and the defense attorney agreed that it was an attempted robbery and not a gang-related killing. Feazell argues that defense counsel “virtually assured” that the jury would find at least two aggravating factors when he agreed to exclude evidence of gang involvement. Thus, Feazell concludes that he was denied effective assistance of counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments.
 

 Appellants can claim ineffective assistance of counsel at post-conviction proceedings. Such claims may not be raised on direct appeal, unless there has already been an evidentiary hearing. Ewell v. State, 105 Nev. 897, 785 P.2d 1028 (1989); Gibbons v. State, 97 Nev. 520, 634 P.2d 1214 (1981). In this case, there has been no evidentiary hearing, so Feazell’s claim is more appropriately raised in a post-conviction proceeding. This court need not address Feazell’s claim on direct appeal.
 

 Second, relying on Lane v. State, 110 Nev. 1156, 881 P.2d 1358 (1994), Feazell claims that there is no legal basis for two aggravating factors. Feazell’s argument is meritless. The aggravating factors in the present case are the same as the aggravating factors in Guy v. State, 108 Nev. 770, 839 P.2d 578 (1992): (1) murder committed while committing or attempting to commit robbery and (2) murder committed for the purpose of receiving money or valuables. This court rejected the challenge to the two factors in
 
 Guy. See Lane,
 
 110 Nev. at 1167, 881 P.2d at 1366. The standard, according to the
 
 Guy
 
 decision, is whether the evidence supported the aggravating factors.
 

 
 *1450
 
 Miller’s testimony and other evidence supports the conclusion that the victim was killed during an attempt to take his car and rob him of his money. Feazell contends that the evidence was insufficient to support such a finding because Miller’s testimony was contradictory and therefore not credible. It is within the province of a jury to determine credibility, and the jury determined that she was credible. Allen v. State, 99 Nev. 485, 665 P.2d 238 (1983).
 

 We conclude that Feazell’s right to a public trial was not violated. We further conclude that the district court did not err by allowing the jury to find two aggravating factors, and that the death penalty was not excessive, in light of the record as a whole and the two aggravating factors in particular. We have considered Feazell’s other arguments and find them to be without merit. We further conclude that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor. We affirm the judgment of conviction and sentence of death.
 

 [1]
 

 “Jack” is slang for “car-jacking,” or stealing someone’s car while he or she is driving.
 

 [2]
 

 The district court “asked an attorney [Ann E. Burke] to come [to the court] and take the young lady and her father in my chambers and talk with them as to their legal rights and other matters.” Burke represented Miller throughout the hearing on whether to exclude certain members of the public from the trial.
 

 [3]
 

 Feazell did not argue that the district court refused to consider alternatives to partial closure of the courtroom.
 

 [4]
 

 The district court did seek to minimize the deviation from the usual open court so as to simultaneously protect Miller’s interest, Feazell’s interest, and the public’s interest. The district court did not exclude the press. Moreover, the district court refused Miller’s request to exclude all young African-American men who wished to see the trial.