JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Daniel Grant ("defendant"), was indicted, along with four other co-defendants, in a 14-count indictment for the robbery and double homicide of Arman Lovett and Jeff Burton and the attempted homicide of Carolyn Diane Pitts inside the Lady Dee's Snack Pack store on East 79th and Central, Cleveland, Ohio. All of the counts contained multiple firearm, mass murder, felony murder, and escape detection specifications.
 {¶ 2} On October 3, 2005, a three-judge panel heard defendant's case after he waived his right to a jury trial. The State presented the testimony of 20 witnesses and admitted nearly 300 exhibits. On October 13, 2005, defendant was found guilty of four counts of aggravated murder with specifications, two counts of attempted aggravated murder with specifications, two counts of aggravated burglary with specifications, and four counts of aggravated robbery with specifications. Defendant was found not guilty of two counts of aggravated robbery. Defendant appeals the convictions and raises two assignments of error for our review.
 {¶ 3} "I. The trial court erred and denied appellant his right to a public trial under the Sixth Amendment to the Constitution of the United States and Article I, §§ 10 and 16 of the Constitution of Ohio, when it ordered the removal and exclusion of individuals from the courtroom during appellant's trial without sufficient cause.
 {¶ 4} "II. The trial court erred and denied appellant his right to a public trial under the Sixth Amendment to the Constitution of the United States and Article I, §§ *Page 4 10 and 16 of the Constitution of Ohio, when it barred and excluded persons without identification from the courtroom.
 {¶ 5} Since both of these assignments of error assert the defendant's right to a public trial, they shall be addressed together. Defendant claims that he was deprived of his constitutional right to a public trial when the trial court (1) excluded two individuals from the courtroom during the testimony of three witnesses and (2) ordered all spectators to present identification before entering the courtroom.
 {¶ 6} Defendant's criminal trial lasted seven days. Due to the brutal nature of the crime and the fact that there was one more defendant that still needed to be tried, the trial court issued a separation of witnesses order on the first day of trial that was agreed to by the parties.[1] On the second day of trial, after the State expressed its concerns with regard to the number of people watching the trial and security at the trial, the court issued an order that all spectators wishing to enter the courtroom present identification. The defense agreed to this order and, in fact, stated that the security measures were "appreciated."[2] Accordingly, defendant has waived any error raised in his second assignment of error. See State v. Drummond,111 Ohio St.3d 13, 23, 2006-Ohio-5084.
 {¶ 7} On the fourth day of trial, the morning session began with the State expressing its concerns about two individuals attending the trial. Specifically, the *Page 5 
State alleged that Annie Ervin and Colana Ervin (the mother and sister, respectively, of one of the co-defendants charged in this case) (collectively referred to as "the Ervins") were engaging in intimidating behavior towards members of the prosecutor's office and Tyshaun Hampton ("Hampton"), a former friend of the defendant who was scheduled to testify at the trial later that day. Specifically, the prosecutor stated that she, and other colleagues, had received a number of intimidating looks from the two women. The prosecutor also stated that Hampton had been accosted by Colana after Hampton had testified against another co-defendant.
 {¶ 8} The trial court conducted a hearing on this issue and heard testimony from Hampton, who told the court that he was approached/accosted by Colana several months ago, after he had testified against a co-defendant, and that he had concerns for his safety and that of his family and friends. He also stated that he would feel safer if the two women were not present during his testimony. Following his testimony, the trial court granted the State's request and ordered the Ervins out of the courtroom for the duration of Hampton's testimony only. Once Colana and Annie were expelled from the courtroom, the prosecution called Hampton as a witness.
 {¶ 9} Later that day, during the afternoon session of the trial, the State raised additional concerns about the Ervins attending the trial. Specifically, the State alleged that the Ervins were also engaging in intimidating behavior towards Tywon *Page 6 
Dubois ("Dubois"), a co-defendant who was scheduled to testify that afternoon. Specifically, the prosecutor stated that she had met with members of the Dubois family and they had expressed concerns for their safety following Tywon's agreement to testify against his co-defendants.
 {¶ 10} Once again, the trial court conducted a hearing regarding this issue and heard testimony from Dubois. Dubois told the court that he was visited by Colana while he was in jail. Dubois stated that he was not concerned for his own safety but only for the safety of his family and he would feel safer if the two women were not present during his testimony. Following his testimony, the trial court granted the State's request and ordered Annie and Colana out of the courtroom for the duration of Dubois's testimony only. Once Colana and Annie were expelled from the courtroom, the prosecution called Dubois as a witness.[3]
Defendant asserts that the trial court erred because the exclusion of these witnesses was not necessary. Specifically, that there was no evidence that the Ervins made any actual threats to either Hampton or Dubois and that making "faces" at the prosecution is not "intimidation."[4] The State maintains that there is a constitutional right to a public trial, *Page 7 
but argues that the trial court has the power to make reasonable exclusions of the public, particularly where the issues of safety are concerned.
 {¶ 11} We agree that the trial court may make reasonable exclusions of the public during trial and find that the exclusion of Annie and Colana from the courtroom during the testimony of Hampton and Dubois was reasonable in this case.
 {¶ 12} The right to a public trial is a fundamental constitutional guarantee under the Sixth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, and Section 10, Article I of the Ohio Constitution. State v. Lane (1979),60 Ohio St.2d 112, 119. The right to a public trial has historically been recognized as a safeguard against possible infringements by the court against the accused. An open courtroom is necessary to preserve and support the fair administration of justice because it encourages witnesses to come forward and be heard by the public, discourages perjury by the witnesses, and ensures that the judge and prosecutor will carry out their duties properly. Id; Waller v. Georgia (1984), 467 U.S. 39, 46,104 S.Ct. 2210, 2215. Also, a public trial allows the general public to see that the defendant is "fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." Waller, supra at 43.
 {¶ 13} However, the right to a public trial is not an absolute right.State v. Unger (1986), 28 Ohio St. 3d 418, 421. A trial judge has the authority to exercise control over the proceedings and may exclude those members of the audience whose *Page 8 
conduct is likely to interfere with the administration of justice or to denigrate the protection of public health, safety, and morals. State v.Drummmond, supra at 21. Nonetheless, the abridgement of a defendant's right to a public trial may occur only when necessary, and any closure must be narrowly drawn and applied sparingly. Id.
 {¶ 14} To close a trial proceeding, the United States Supreme Court set forth the following four-pronged test that courts must use to determine whether closure of a courtroom is necessary: "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." Waller, supra at 48.
 {¶ 15} In Waller, which dealt with a suppression hearing rather than a trial, all persons other than witnesses, court personnel, the parties, and their lawyers were excluded for the entire duration of the suppression hearing. Id. at 42. This case is similar toDrummond, supra, since it deals with partial exclusion during a trial. Here, the trial court excluded two members of the public, not defendant's family, and only for the length of two (and not three as claimed by defendant) witnesses' testimony. Federal courts have concluded that when a trial judge orders a partial, as opposed to a total, closure of a court proceeding, a "substantial reason" rather thanWaller's "overriding interest" will justify the closure. See Woods v.Kuhlmann (C.A.2, 1992), 977 F.2d 74, 76; United States v. Sherlock
(C.A.9, 1989), 962 F.2d 1349, 1357; Nieto *Page 9 v. Sullivan (C.A.10, 1989), 879 F.2d 743, 753; Douglas v. Wainwright(CA.11, 1984), 739 F.2d 531, 533.
 {¶ 16} After carefully reviewing the record here, we find that the trial court's partial exclusion order on October 6, 2005, satisfied theWaller criteria. First, the trial court's interest in maintaining courtroom security and protecting witness safety supported the trial court's limited exclusion of two members of the public. The prosecutor testified that Annie and Colana were engaging in "stare-downs" with her and other prosecutors. Hampton and Dubois testified that Colana had attempted to intimidate them with regard to the testimony that they were going to give at trial. Both men further testified that they were concerned for their safety and the safety of their families. Similar to the facts in Drummond, supra, this case involved allegations of gang-style violence and brutality. Adopting the reason found inDrummond, we acknowledge the dangerous nature of gang violence and the genuine need to protect witnesses testifying from the deadly threat of retaliation. See, also, Brown v. Kuhlmann (C.A.2, 1998), 142 F.3d 529,537-538 (concern for undercover officer's safety in testifying against drug dealers justified partial closure where closure was brief and testimony given during the closure was merely corroborative). Thus, the trial court had a "substantial reason" to order the partial closure of the courtroom.
 {¶ 17} Second, the closure was narrowly tailored. The Ervins were excluded only while Hampton and Dubois testified and were readmitted afterwards. In addition, the transcript of the trial became a public record. Accordingly, we find none of the *Page 10 
secrecy prohibited by the Sixth Amendment. See United States v.Sherlock, supra at 1358.
 {¶ 18} With respect to the third Waller factor, the record shows that the State requested that the Ervins be excluded from the entire trial and that the trial court only excluded them from the testimony of two witnesses. Accordingly, the partial exclusion is narrower than full exclusion for the entire trial. See Drummond, supra at 23.
 {¶ 19} Finally, as to the last Waller factor of adequate findings, the transcript shows that the trial court was made aware that the Ervins were engaging in a pattern of intimidation and potential witness tampering. The trial judge voir dired both Hampton and Dubois and concluded, based upon their testimony, that the witnesses had reasonable concerns for the safety of themselves and their families. The fourthWaller factor is satisfied, despite the lack of specific findings of fact, where the "information gleaned" from the record is "sufficient to support the partial, temporary closure of petitioner's trial."Woods, supra at 77-78. Under these circumstances, where there is an interest in maintaining courtroom order and security, the trial court did not abuse its discretion in ordering the limited exclusion of two spectators from the courtroom. Accordingly, we conclude that the trial court did not deny defendant his constitutional right to a public trial under the United States and the Ohio Constitutions by excluding Annie and Colana from the courtroom during the testimonies of two witnesses. *Page 11 
 {¶ 20} Defendant's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MARY J. BOYLE, J., CONCUR.
[1] Tr. 69.
[2] Tr. 174.
[3] Defendant also asserts that the trial court erred when it excluded Annie and Colana from the courtroom during the testimony of Dedrick Devins. However, the record demonstrates that there was no order from the trial court to exclude the Ervins during his testimony.
[4] Appellate brief at page 14. *Page 1