**Harry IP, Petitioner,**

v.

**Robert HENDERSON, Superintendent Auburn Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.**

No. 88 CIV. 5321 (LBS).

United States District Court,
S.D. New York.

March 1, 1989.

Harry Ip, pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for respondents; Elaine Stogel, Asst. Atty. Gen., of counsel.

OPINION

SAND, District Judge.

Harry Ip has filed this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 *et seq.* Following a jury trial in New York County, petitioner was convicted on May 6, 1986 of first-degree sale of a controlled substance under N.Y.Penal Law § 220.43 (McKinney 1980). He was sentenced to serve 15 years to life imprisonment and is currently incarcerated at the Auburn Correctional Facility. The Appellate Division, First Department, of the Supreme Court of the State of New York, affirmed his conviction without opinion on February 28, 1988. Petitioner's timely application for a certificate granting leave to appeal to the New York Court of Appeals was denied on April 28, 1988. Petitioner requests a writ of habeas corpus on the ground that his sixth amendment right to a public trial was violated and that certain evidence was improperly admitted. Having raised these issues in his state court proceedings, petitioner has exhausted available state remedies.

## I. Background

Petitioner alleges that his sixth amendment right to a public trial was violated when the trial judge closed the courtroom during the testimony of a government witness. The judge closed the courtroom to all spectators during the testimony of three witnesses. Petitioner does not challenge the judge's ruling concerning two of these witnesses, both of whom were undercover police officers engaged in ongoing investigations. He does contend, however, that the judge erred in closing the courtroom during the testimony of the third witness, who was an accomplice to the defendant's crime and who, after pleading guilty, entered into an arrangement with the government whereby he would testify at the defendant's trial and provide the government with information about other criminal activity in exchange for a sentencing concession.

During petitioner's trial, the judge held a hearing pursuant to *People v. Hinton*, 31

N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972), *cert. denied sub nom. Hinton v. New York,* 410 U.S. 911, 93 S.Ct. 970, 35 L.Ed.2d 273 (1973), to determine whether the courtroom should be closed. The only evidence presented by the government in support of its motion was the testimony of the witness who said that he felt his life was in danger and that he did not want to "show [his] face in public." Trial Tr. at 665. He testified that he feared for his safety not during trial, but during his time in prison and upon his release from prison. *Id.* at 669. In response to questions from both defense and government counsel, he indicated that if he were required to testify with an audience he might be so nervous that he would be unable to testify truthfully. *Id.* at 675.

The hearing centered on these fears and the judge's inability to assure the witness that no harm would come to him once he left the courtroom. The judge ruled that:

If the courtroom can be closed to protect embarrassment of a witness it certainly can be closed to protect a witness who feels his life is in danger. It does no good to cite to a witness instances of other brave people who come forward and give testimony without being overly concerned that their life is in danger. He thinks his life is in danger and it does not do him any good to tell him that other people in his position have done so without harm. The literature and I suppose every prisoner in the State of New York and in every state in the country knows that very little protection can be accorded to the prisoner from harm that may come to them from other prisoners. All kinds of heinous crimes have been perpetrated on prisoners under the eyes of the whole Department of Correction. Rapes, all kinds of crimes. The literature is full of instances of prisoners being at the mercy of other prisoners and about which the corrections officers have been able to do very little and in many instances the only escape was that the prisoner took his own life by hanging himself. The literature is filled with that too. I am not going to assure the prisoner who feels that by cooperating with the Police Department in this case and in ongoing cases that no harm is going to come to him and at the risk of his life to open the courtroom to the public. I think in weighing the prejudice that might be done to these two defendants to close the courtroom only temporarily for a limited period of time while this witness testifies is far outweighed by the harm that might come to this witness if the courtroom were open....

Trial Tr. at 689–91.

Defense counsel vigorously contested this ruling, citing defendant's sixth amendment right to a public trial, pointing out that the judge's reasoning would apply to all witnesses, and adding that other possible protective measures had not been considered or taken.

## II. Discussion

A criminal defendant has a fundamental right to a public trial under the sixth amendment. *In re Oliver,* 333 U.S. 257, 266, 68 S.Ct. 499, 504, 92 L.Ed. 682 (1948). This right assures the public that the defendant is dealt with fairly, protects against prosecutorial and judicial misconduct, and most importantly to this case, encourages witnesses to come forward and discourages perjury. *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). In *Waller,* the Supreme Court addressed the extent of this right and said that although "the right to an open trial may give way in certain cases to other rights or interests, ... [s]uch circumstances will be rare ... and the balance of interests must be struck with special care." 467 U.S. at 45, 104 S.Ct. at 2215.

Under the test articulated in *Waller,* a party seeking to close the courtroom must "advance an overriding interest that is likely to be prejudiced," and the closure may be "no broader than necessary to protect that interest." *Id.* at 48, 104 S.Ct. at 2216 (applying test used in first amendment challenges of courtroom closures to sixth amendment challenge). The trial court must "consider reasonable alternatives to closing the proceeding, and it must

make findings adequate to support the closure." *Id.*

■ At petitioner's trial, the government sought to close the courtroom during testimony of one of its key witnesses because the witness feared retaliation for his cooperation. In some instances, the safety of a witness will certainly be an overriding interest, especially in cases involving undercover agents, informants, or witnesses whose lives have been threatened. *See, e.g., United States v. De Los Santos,* 810 F.2d 1326, 1334 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987). The facts of each case, however, must be evaluated individually and a determination regarding closure must be made on a case-by-case basis. In considering the interest, the court may not enact a *per se* rule in favor of closing the courtroom in certain instances, rather, the trial judge must look to the particular circumstances of each case. *Jones v. Henderson,* 683 F.Supp. 917, 923 (E.D.N.Y.1988) (citing *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609, 102 S.Ct. 2613, 2621–22, 73 L.Ed.2d 248 (1982)).

During the hearing, no facts or circumstances were presented by the prosecution to distinguish this case from any other case in which a co-defendant enters into a plea bargain. The prosecution made no showing of any danger whatsoever towards the witness. The only evidence presented was the witness's own testimony that he feared that his life was in danger and that he did not "want to show [his] face in public." Trial Tr. at 665. The witness had received no threats or injury although he was in the general population at Riker's Island and other defendants knew his name, had numerous contacts with him, and appeared publicly with him in other related court proceedings. *Id.* at 664–66, 670, 684.

The judge based his ruling solely on the ground that the witness feared for his life and that neither the judge nor the prison system could make any guarantees for his safety. He felt, however, that he could do a "little thing" to protect him by closing the court. Trial Tr. at 693. The judge believed that in order for the court to remain open he had to assure the witness of his safety. Because a judge can never guarantee a witness's safety inside or outside the courtroom, this rationale would require closing the courtroom at the request of any witness and in effect would result in a *per se* rule. Defense counsel objected on this ground several times and at one point the following colloquy took place:

MR. GOLDENBERG: Then that would hold true for every single witness in every case in the building.

THE COURT: It happens time and time again when witnesses come to me and plead and cry that they believe their life is in jeopardy, their loved ones['] lives are in jeopardy and that they will not be able to testify and there is very little I can do about it to assure them that I would, I can safeguard their loved ones or safeguard their lives. I mean innocent witnesses that come in and they have been subpoeaned [sic] and all kinds of pressure is put on them and they don't want to testify.

MR. GOLDENBERG: Your Honor has mentioned loved ones, he has not mentioned anything about loved ones.

THE COURT: I tell you what other people tell me.

MR. GOLDENBERG: That's a different case[;] that's not this case. We are talking about this witness in this case.

THE COURT: I merely want to make the point that I wish I had the power to tell a witness that I can guarantee his or her safety. I don't have the power so I can't tell him that.

Trial Tr. at 677–78.

Although the judge did limit the closure of the courtroom to the testimony of the witness, he refused to consider any alternatives to closure. When the defense counsel asked if the witness's fears would be alleviated if persons coming into the courtroom were searched or a metal detector were used, the government objected and the judge sustained the objection. *Id.* at 667. When defense counsel asked the witness if he would be reassured by the presence of more court officials, the judge interrupted

saying: "That's begging the question. I cannot guarantee him that no harm is going to come to him." *Id.* at 676. The judge also refused to consider protective custody at the prison, a precaution which the prosecution, despite its assertions of danger, had not requested. Again, the judge reasoned that he could not guarantee the witness's safety and responded to defense counsel's objection by saying that "[m]aybe when you are the court you will take that responsibility on you, but I will not." *Id.* at 693. In addition, the judge did not consider partial closure to allow the petitioner's family and any interested members of the press access to the trial. *See Douglas v. Wainwright,* 739 F.2d 531, 532 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985) (distinguishing *Waller* based on *Waller's* total, rather than partial, closure).

Finally, as noted above, the trial judge made only general findings that would apply to almost any witness. He relied on the witness's assertion that he feared for his life, rather than considering the individual circumstances of the case, to determine if the danger to this particular witness was grave enough to warrant the extreme measure of closing the courtroom. The scope of his ruling was impermissibly broad and did not take into account petitioner's right to a public trial.

 Petitioner is not required to demonstrate specific prejudice in order to obtain relief for a violation of his right to a public trial. *Waller, supra,* 467 U.S. at 49, 104 S.Ct. at 2217. We note briefly, however, that the potential for prejudice to petitioner certainly existed in this case. The witness was not a neutral informant or undercover agent. He had a large stake in the outcome of the case because the length of his sentence depended on his testimony and cooperation with the government. Thus, he had a strong incentive for perjury. In addition, closure was not needed to protect an ongoing investigation. Although the witness was still cooperating, he was cooperating from prison and the information he provided pertained to past activities rather than to an ongoing operation. Moreover,

even if the investigation had been ongoing, the government still would be required to demonstrate "the compelling character" of its interest. *Jones v. Henderson, supra,* 683 F.Supp. at 923 (government's interest not shown to be compelling when government "failed to present even the basic facts concerning the extent and nature of [a] witness's undercover duties").

The trial judge appears not to have considered the potential prejudice to the defendant. Certainly, it is desirable to protect witnesses and encourage their cooperation; however, their safety cannot always be guaranteed. In some cases, a witness's safety may become the overriding concern. This is not such a case. This case involved an accomplice who stood to gain from his testimony and a prosecutor who failed to make any specific showing of danger. Thus, the potential prejudice to the defendant outweighs the competing interest of purported danger to the witness.

The remedy must be appropriate to the violation; accordingly, petitioner must receive a new trial. *See, Waller, supra,* 467 U.S. at 50, 104 S.Ct. at 2217.

 Petitioner also alleges in his habeas petition that bank slips found in his wallet at the time of his arrest were introduced improperly into evidence at his trial. Because we remand for trial on his sixth amendment claim, we need not reach the merits of petitioner's second claim. We note, however, that questions regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness. *United States ex. rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517 (7th Cir.1982). Challenges based on improper evidentiary rulings must allege a violation of a specific constitutional right. *Gilmore v. Curry,* 523 F.Supp. 1205, 1208 (S.D.N.Y.1981); *Mitchell v. Smith,* 481 F.Supp. 22, 25 (E.D.N.Y.1979), *aff'd on other grounds,* 633 F.2d 1009 (2d Cir.1980), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981). Petitioner's claim that the evidence was not relevant does not rise to a constitutional level.

Ip's petition for a writ of habeas corpus is granted. If the indictment is not moved for retrial within 60 days of the date of this opinion, petitioner shall be released from all further custody with respect to the charges contained in the indictment.

SO ORDERED.