7 A.3d 64

**Kenneth LONGUS**

v.

**STATE of Maryland.**

**No. 68, Sept. Term, 2009.**

Court of Appeals of Maryland.

Oct. 26, 2010.

434

436

Michael R. Malloy, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief, for petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA, JJ.

GREENE, J.

In this case, we are asked to determine whether the trial judge's decision to exclude two spectators from the courtroom during the testimony of a witness, at the trial of Kenneth Longus, violated his Sixth Amendment right to a public trial. In resolving that question, we must consider whether the "substantial reasons" standard for partial courtroom closures [1] or, instead, the "overriding interests" standard for courtroom closures, as announced by the United States Supreme Court in *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), is the appropriate test for a judge to apply in determining whether to exclude members of the public from courtroom proceedings. We shall hold that trial judges have discretion to impose reasonable limitations on access to court proceedings, when there is an overriding interest likely to be prejudiced if closure is not employed, in light of the factors enunciated in *Waller*.

---

1. A total courtroom closure occurs when "all persons other than witnesses, court personnel, the parties and their lawyers [are] excluded" from the courtroom. *Woods v. Kuhlmann*, 977 F.2d 74, 76 (2d Cir.1992). A partial courtroom closure is limited in scope, and occurs when only some but not all spectators are excluded from the courtroom. *See id.; United States v. Osborne*, 68 F.3d 94, 98 (5th Cir.1995). We have pointed out in our cases, however, that "[e]xcluding even just some of the public is considered to be a closure of the courtroom and may affect a defendant's right to a public trial." *Tharp v. State*, 362 Md. 77, 102 n. 14, 763 A.2d 151, 164 n. 14 (2000); *Watters v. State*, 328 Md. 38, 45, 612 A.2d 1288, 1293 (1992); *see also Walker v. State*, 121 Md.App. 364, 373, 709 A.2d 177, 181–82 (1998).

In the present case, neither the trial judge nor the Court of Special Appeals applied the "overriding interest" standard to determine whether the State's interest warranted a partial closure of the courtroom. Even if we were to draw a distinction between total and partial closures and assume that the "overriding interests" standard applies only to total closures and that the "substantial reasons" standard applies only to partial closures, the exclusion of the two spectators from the courtroom, in the present case, was improper on the basis of the record before us. Even in a partial closure context, the remaining *Waller* factors, described *infra*, must be satisfied. *See Commonwealth v. Cohen*, 456 Mass. 94, 921 N.E.2d 906, 921 (2010) (recognizing that "a partial courtroom closure is governed by the same constitutional standards as a complete closure."). Specifically, in the present case, the State failed to satisfy its burden of establishing either an overriding interest or a substantial reason to exclude the spectators considering the substantive inadequacy of the proffer given to the trial court. In addition, the *post hoc* testimony of the State's witness, given after the trial judge ordered two spectators removed from the courtroom, should not have been relied on by the appellate court in reviewing the propriety of the closure motion.

## I.

On September 28, 2006, the defendant, Kenneth Longus ("Longus"), and two teenage male friends went to Lindsay Wise's ("Wise") home and asked to borrow a hammer. Wise gave Longus a hammer, and he left. Soon afterward, a gun shop near Wise's home was robbed. The attackers fought with the shop owner and took three guns from the shop. The shop owner was unable to provide detailed descriptions of his attackers because they were wearing hooded sweatshirts, and because he was restrained. The police recovered a hat left at the gun shop by one of the attackers.

The day after the robbery, Longus went to Wise's home. Wise saw Longus show her roommate three guns and overheard Longus tell her roommate that he took the guns from a

gun shop the night before, and that he had lost his hat. The State located Wise and ultimately convinced her to testify against Longus, who was charged with robbery and assault arising out of the incident at the gun shop.[2] Because the gun shop owner was unable to positively identify Longus, Wise was a key witness for the State's case.

Before trial in the Circuit Court for Washington County, the State made a preliminary motion to exclude specific spectators from the courtroom during Wise's testimony:

[State's Attorney]: Yes your honor, there is a witness that will be testifying. I don't believe she is currently in the courthouse. I believe she's at the state's attorney's office. Her name is Lindsay Wise. She will be testifying against the defendant here today. There has been a significant amount of almost witness intimidation going on between the uh [sic] from the defendant to Miss Wise and including the defendant's family, specifically his father and Miss Wise's next door neighbor, Millie Myers. As a matter of fact there was even contact with Miss Wise last night. Miss Wise, I— my concern is that she is going to further feel intimidated. Those people are here in the courtroom. I would ask the Court to exclude them from the courtroom when she testifies only so that she can, she can tell the truth, that she can speak freely and not be further intimidated. The intimidation has been going on for quite some time your Honor.

[Defense]: Your honor, I understand that Miss Wise and my client were one time boyfriend and girlfriend. I think any witness's testimony is suspect when a person is presumed innocent and I think to remove other persons from the courtroom from listening to what you have to say can also have the [e]ffect of allowing someone to say things under oath, which are untrue, which otherwise feel comfortable saying except as being noted by witnesses. I don't think there is any indication other than displeasure at her

---

2. The charges against Longus were: Count 1: Robbery with a deadly weapon; Count 2: Robbery; Count 3: Theft of $500 value or more; Count 4: Assault, first degree; Count 5: Assault, second degree.

appearance here today that she has been intimidated. I'd ask that persons who are here on behalf of my client, his family, not be excluded from this proceeding.[3]

The trial court deferred ruling on the State's pretrial motion. Once trial commenced, the State renewed its motion to exclude three spectators during the trial.

[State's Attorney]: State calls Lindsay Wise. (Pause for approximately six minutes while witness is located and enters the courtroom.) . . .

( [The jury was excused and] the following ensued out of the presence of the jury:)

[State's Attorney]: Yes your Honor, the State renews its motion to exclude certain persons from the courtroom.

The Court: Specifically?

[State's Attorney]: [The Defendant's father, Glenn Goode,] . . . Miss Millie Myers . . . [and] Mr. Don–Don Norris.

The Court: Okay. Basis?

[State's Attorney]: They have been threatening Miss Wise over a period of time.

The Court: Mr. Joyce?

[Defense]: Your Honor, with respect to the State's motion, I will not argue with respect to Mr. Goode because I know that Mr. Goode is concerned for his son and may have had, may have had some involvement with communications with this witness. With respect to the other persons, I believe they are known to this community who know everyone involved. I don't believe there is any evidence they threatened anyone and I believe it is improper to exclude members of the public from a trial. Trials are supposed to be open to the public.

---

**3.** By opposing the State's motion to exclude Myers and Norris, Longus preserved his claim for appellate review. *See Robinson v. State,* 410 Md. 91, 110, 976 A.2d 1072, 1083 (2009) (holding that "a claimed violation of the right to a public trial must be preserved for review by a timely objection at trial").

The Court: The uh—Glenn Goode, the father of the defendant—(Defendant enters the courtroom.) The defendant has now joined us. There is a motion pending, Mr. Longus, to exclude Glenn Goode, Millie Myers and Donald Norris from the testimony of Lindsay Wise.... Mr. Goode is the defendant's father. I don't believe that there is a particular objection from the defendant as to that individual. It's my understanding that Millie Myers has made certain allegations regarding the defendant or regarding this witness?

[State's Attorney]: Your honor, I can tell the Court that she has facilitated phone calls from the defendant to Miss Wise so that when Miss Wise sees her phone and sees her caller I.D. she believes its [sic] Millie Myers, she answers the phone and it's the defendant. We've had that happening. We've also had communications where the defendant would tell Ms. Myers something and Ms. Myers would then pass that message along to ... this witness, specifically comments about needing to leave town and not to testify.

The Court: And as to Donald Norris?

[State's Attorney]: Your Honor, just last night there was a communication between the defendant and Ms. Wise that was actually a four-way conversation facilitated by Don—Don Norris as well as Millie Myers and her daughter, Amy.

The Court: Okay. All right. Trials are public in nature, however, in order to move things along it is sometimes necessary to restrict movement into the courtroom and the presence of certain people under the circumstances. I find that there is extraordinary cause to grant the request of the State and for the testimony of Lindsay Wise, both direct, cross and redirect.... Glenn Goode, Millie Myers and Donald Norris are removed from the courtroom, although other people are allowed back in. All right Deputy? Thank you. Bring the jury in please.

I will also note for the record that there was approximately about seven to eight minutes when the State was attempting to get the witness in the courtroom and apparently she was having some difficulty entering the courtroom as a result of all of this.

After Goode, Myers, and Norris were removed from the courtroom, the jury returned and Wise took the stand. The State began its questioning by asking Wise about her fear of testifying.

Q. When your name was called a little bit earlier, you seemed to have some difficulty coming into the courtroom, why is that?

A. Because I was scared.

Q. I'm sorry?

A. I was scared.

Q. What are you scared of?

A. Testifying.

Q. Why?

A. I'm scared of what will happen afterwards, if anything.

. . .

Q. And Ms. Wise—After this trial here today, do you intend to return home to 106 Buena Vista?

A. No ma'am.

Q. Why?

A. Scared.

Q. When you and I have talked about you coming here and testifying—Do you recall the first time that you met with Detective Brandt and me?

A. (No audible response.)

Q. Do you recall meeting with Detective Brandt in a green Chevy Lumina?

A. Yes. Yes.

Q. And were you, were you inclined to testify at that time?

A. No. No.

Q. Okay. Why have you had a change of heart? Why are you here today?

A. Because I have been able to work out plans. I don't have to go home. I don't have to go back to the previous address.

Q. And part of those plans that you have made, you expect to be assisted by the State to help you relocate, is that right?

A. Yes.

At the conclusion of the trial, the jury convicted Longus of robbery and second degree assault. The court imposed a fifteen year prison sentence for robbery and merged the assault count. As to an unrelated conviction for carrying a handgun, the court imposed a consecutive sentence of eighteen months.

Longus filed a timely appeal to the Court of Special Appeals, arguing, *inter alia,* that the Circuit Court erred in granting the State's motion to exclude Myers and Norris from the courtroom during the testimony of the State's witness, Wise.[4] *Longus v. State,* 184 Md.App. 680, 688, 968 A.2d 140, 146–47 (2009). The Court of Special Appeals held that the trial judge did not abuse his discretion in excluding Myers and Norris during the testimony of a key prosecution witness. *Longus,* 184 Md.App. at 691, 968 A.2d at 147. In the intermediate appellate court's view, the State demonstrated a substantial reason sufficient to exclude Myers and Norris from the courtroom, which was to "secure testimony, uninfluenced by intimidation, from a witness who was fearful of testifying in the presence of both [Myers and Norris]." *Id.*

This Court granted Longus's petition for a writ of certiorari, *Longus v. State,* 409 Md. 47, 972 A.2d 861 (2009), to answer the following questions:

1. Did the lower court err by ruling that a trial judge can exclude a portion of the spectators from the courtroom if the moving party offers a "substantial reason" to do so?

---

4. Longus also argued in his brief to the Court of Special Appeals that the Circuit Court erred in denying his request for a continuance to obtain an additional defense witness. This issue, however, was not raised in Longus's petition to this Court.

2. Did the trial judge err by granting the State's motion to exclude two spectators from the courtroom during the testimony of a key prosecution witness?

## II.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." [5] The purpose of a public trial is to guarantee fairness, the appearance of fairness, and public confidence in the criminal justice system. The Supreme Court discussed the importance of the right in *In re Oliver,* noting that "distrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, . . . the English Court Star Chamber, and . . . the French monarchy's abuse of the *lettre de cachet* " and that the aforementioned institutions were a "menace to liberty" and "an instrument for the suppression of political and religious heresies in ruthless disregard for the right of an accused to a fair trial." 333 U.S. 257, 268–70, 68 S.Ct. 499, 505–06, 92 L.Ed. 682, 691–92 (1948). *See also Press–Enterprise Co. v. Superior Court of California, Riverside County,* 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629, 637 (1984) ("The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed.").

A public trial "ensure[s] that [the] judge and prosecutor carry out their duties responsibly . . . encourages witnesses to come forward[,] and discourages perjury." *Waller,* 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. The right to a public trial is "for the benefit of the accused; that the public may see that he is fairly dealt with and not unjustly

---

**5.** The Sixth Amendment expressly grants criminal defendants the right to a public trial. *Waller,* 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. The First Amendment, however, implicitly grants the public, including the press, a right of access to trials. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 604–606, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248, 255–56 (1982).

condemned." *Waller*, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38 (citations omitted); *In re Oliver*, 333 U.S. at 270, 68 S.Ct. at 506, 92 L.Ed. at 692 (noting that public trials "safeguard against any attempt to employ our courts as instruments of persecution"); *see also Tinsley v. United States*, 868 A.2d 867, 873 (D.C.2005) ("openness serves not merely the interest of the accused in a fair trial but also the interests of the public at large in being informed about the administration of justice."). The accused has a particular interest in having his or her family and friends attend the trial because "[o]f all members of the public, a criminal defendant's family and friends are the people most likely to be interested in, and concerned about, the defendant's treatment and fate." *Id.; see also Walker v. State*, 125 Md.App. 48, 71, 723 A.2d 922, 933–34 (1999); *Gannett Co. v. DePasquale*, 443 U.S. 368, 380, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608, 621 (1979) (noting that the Supreme Court has "uniformly recognized the public-trial guarantee as one created for the benefit of the defendant."). Accordingly, "it is precisely their attendance at trial that may best serve the purposes of the Sixth Amendment public trial guarantee." *Tinsley*, 868 A.2d at 873.

The right to an open trial, however, is not absolute. *Carter v. State*, 356 Md. 207, 216, 738 A.2d 871, 875 (1999). "[T]he presumption of openness may be overcome *only by an overriding interest* based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise*, 464 U.S. at 510, 104 S.Ct. at 824, 78 L.Ed.2d at 638 (emphasis added). In some cases, "the right to an open trial may give way ... to other rights and interests." *Walker v. State*, 121 Md.App. 364, 371, 709 A.2d 177, 180 (1998) (quoting *Waller*, 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 38). Other interests, for example, include "the government's interest in inhibiting disclosure of sensitive information,"[6] or those interests that are essential to the administration of justice, the interest of a witness whose life

---

6. *Waller*, 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 38.

has been threatened,[7] and "maintaining the fairness and orderliness of the proceeding." [8] The ultimate determination of whether the right to an open trial will give way to other rights or interests requires a careful balancing of those concerns. *Waller*, 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 38.

In *Waller*, the United States Supreme Court established a framework for determining whether the defendant's right to an open trial gives way to a State interest in closure. *Waller*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. When considering the extent to which a suppression hearing may be closed to the public over the defendant's objection, the United States Supreme Court held that, for a closure to comport with the Sixth Amendment, 1) the party seeking closure must advance an overriding interest that is likely to be prejudiced, 2) the closure must be no broader than necessary to protect that interest, 3) the trial court must consider reasonable alternatives to closure, and 4) the trial court must make adequate findings in support of the closure. *Id.* The party requesting closure has the burden of proving that the *Waller* factors warranting closure have been met. *See Carter*, 356 Md. at 216, 738 A.2d at 876; *People v. Ramos*, 90 N.Y.2d 490, 662 N.Y.S.2d 739, 685 N.E.2d 492, 496 (1997) (noting that the proponent of closure must establish that there is a "substantial probability" that the interest asserted will be prejudiced as a result of an open proceeding). Although we shall consider each factor, the crux of the dispute in this case turns on the first factor, whether there was an overriding interest likely to be prejudiced.

### III.

### The "Substantial Reason" Test

The first question posed in Longus's petition for certiorari asks us to determine whether the intermediate appellate court

---

**7.** *Ip v. Henderson*, 710 F.Supp. 915, 918 (S.D.N.Y.1989), *aff'd* without opinion, 888 F.2d 1376 (2d Cir.1989).

**8.** *Butler v. Smith*, 416 F.Supp. 1151, 1154 (S.D.N.Y.1976).

erred in applying a modified version of the first prong of the *Waller* test. The trial judge, in excluding Myers and Norris, applied neither the "overriding interest" test announced in *Waller* nor the "substantial reason" test employed by the Court of Special Appeals. Rather, the trial judge determined that the State advanced, what the judge described as, "extraordinary cause to grant the request" for a partial closure of the courtroom. The Court of Special Appeals, instead of applying the overriding interest analysis announced in *Waller*, adopted the less stringent "substantial reason" test for partial courtroom closures. Longus argues that the intermediate appellate court erred in applying a "substantial reason" standard to a partial closure in place of the "overriding interest" standard announced by the United States Supreme Court. In Longus's view, the exclusion of one spectator, under some circumstances, is as objectionable as the exclusion of all spectators, particularly if the individuals excluded are the defendant's family members or friends. Longus points out that the *Waller* standard, requiring that the State show an overriding interest in closure, makes adequate allowance for factors that justify limiting the right of access to trial. To be certain, the United States Supreme Court could have announced a lower standard, such as requiring a substantial reason or important reason, but the Court did not do so.

The State responds, arguing that the substantial reason test adequately protects the rights of defendants because partial closures do not implicate the same secrecy concerns as total closures. The State directs us to the fact that the intermediate appellate court's decision is not without precedent. Rather, as noted by the State, the Court of Special Appeals adopted the same reasoning as several of the United States Courts of Appeals and appellate courts of other states in applying the substantial reason standard when reviewing partial closures. *See, e.g., United States v. Osborne,* 68 F.3d 94, 98–99 (5th Cir.1995); *United States v. Farmer,* 32 F.3d 369, 371 (8th Cir.1994); *Woods v. Kuhlmann,* 977 F.2d 74, 76–77 (2d Cir.1992); *United States v. Sherlock,* 962 F.2d 1349, 1356–57 (9th Cir.1992); *Nieto v. Sullivan,* 879 F.2d 743, 753 (10th

Cir.1989); *Douglas v. Wainwright*, 739 F.2d 531, 532–33 (11th Cir.1984) (per curiam); *Ex parte Easterwood*, 980 So.2d 367, 376 (Ala.2007); *State v. Drummond*, 111 Ohio St.3d 14, 854 N.E.2d 1038, 1054 (2006); *Feazell v. State*, 111 Nev. 1446, 906 P.2d 727, 729 (1995).

For example, in *Woods*, the United States Court of Appeals for the Second Circuit applied "the less stringent 'substantial reason' test to determine whether a defendant's right to a public trial was violated by a partial closure of the proceedings." 977 F.2d at 76. In adopting the "substantial reason" standard, the court noted that partial closures, particularly when limited in both scope and duration, do not implicate the same fairness or secrecy concerns as total closures. *Id.* Other courts have adopted similar reasoning, noting that in a partial closure, an audience still remains to ensure the fundamental fairness of the proceedings. *Osborne*, 68 F.3d at 99.

We disagree with the reasoning of those courts. In our view, although a partial closure may not implicate the same secrecy issues for the public as a total closure, a partial closure does implicate the same fairness issues. We are not the only court to have rejected an analysis which requires application of a different standard depending on whether the courtroom closure was total or partial. In *People v. Jones*, 96 N.Y.2d 213, 726 N.Y.S.2d 608, 750 N.E.2d 524 (2001), the New York Court of Appeals affirmed the use of a screening procedure implemented to restrict the access of those who entered the courtroom during the testimony of an undercover police officer. The court determined that posting a court officer outside the courtroom to exclude potential spectators who might pose a threat to the testifying undercover officer was a limited or partial closure and implicated the defendant's Sixth Amendment right to a public trial. *Jones*, 726 N.Y.S.2d 608, 750 N.E.2d at 528–529. Recognizing that "[t]he risk of prejudice to a compelling interest such as safety of an undercover officer depends upon the facts of each case," the appellate court held that "the People met their burden[,]" and presented evidence that satisfied all four *Waller* prongs. *Jones*, 726 N.Y.S.2d 608, 750 N.E.2d at 529–30. Thus, the restriction on

the public's access to the courtroom did not violate the defendant's right to a public trial. *Id.* In concluding that the "overriding interest" standard applies when a court is asked to order a partial closure, the appellate court acknowledged "that some courts have recognized that a less demanding standard can be applied to limited closure requests." *Jones,* 726 N.Y.S.2d 608, 750 N.E.2d at 529. The court, however, disagreed that a "substantial reason" rather than *Waller's* requirement of an "overriding interest" justified the closure. *Id.* The court explained:

> We believe that there is no need to adopt such an articulation of the *Waller* standard since *Waller* already contemplates a balancing of competing interests in closure decisions. When the procedure requested impacts on a defendant's right to a public trial, nothing less than an overriding interest can satisfy constitutional scrutiny.

> \* \* \* \* \* \*

> The proponent of closure must still establish that there is a 'substantial probability' that the overriding interest asserted will be prejudiced as a result of an open proceeding. Trial courts are called upon to ensure that the closure is no broader than necessary and to consider alternatives to closure suggested by the parties. The breath of the closure request therefore will always be measured against the risk of prejudice to the asserted overriding interest.

*Id.* (citations and quotations omitted). Other courts have also extended the *Waller* analysis to partial courtroom closures. *See, e.g., Commonwealth v. Cohen,* 456 Mass. 94, 921 N.E.2d 906, 921 (2010); *State v. Mahkuk,* 736 N.W.2d 675, 684–685 (Minn.2007); *State v. Ortiz,* 91 Hawai'i 181, 981 P.2d 1127, 1137 (1999).

Recently, in concluding that the right to a public trial applies to the jury selection process (the *voir dire* of prospective jurors), the United States Supreme Court in *Presley v. Georgia,* —— U.S. ——, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) recognized that

[t]here are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing voir dire. But, in those cases the particular interest, and threat to that interest, must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

—— U.S. at ——, 130 S.Ct. at 725, 175 L.Ed.2d at 679. *Presley* involved a total closure of the courtroom because the defendant's uncle was the only spectator in the courtroom at the time the court ordered him to be removed. The trial judge's rationale for excluding spectators from the courtroom, the ruling on which was affirmed by the Supreme Court of Georgia, was that intermingling between prospective jurors and spectators could result in the prospective jurors overhearing "inherently prejudicial remarks from observers during voir dire[.]" *Presley*, 130 S.Ct. at 723. The United States Supreme Court reversed, holding that the trial court failed to consider alternatives to closure and failed to identify any overriding interest likely to be prejudiced absent the closure of *voir dire*. *Presley*, 130 S.Ct. at 725. In other words, the trial judge abused his discretion in closing the courtroom to the defendant's uncle under circumstances where no particular interest or threat to that interest was articulated and no case-specific factual findings were made to allow the reviewing court an opportunity to determine whether the closure order was properly entered. *Id.* It is apparent, in view of the Supreme Court's analysis, that the question of whether the closure was total or partial was immaterial. *See Commonwealth v. Cohen*, 921 N.E.2d at 922 (acknowledging that "the [United States] Supreme Court's concern about the intermingling rationale appears to apply in the partial closure context as well. . . .").

In the present case, as in many cases, *see, e.g., Woods*, 977 F.2d at 76–77, *Walker*, 125 Md.App. at 71, 723 A.2d at 933–34, the partial closure excluded members of the defendant's family and friends. As the District of Columbia Court of Appeals noted in *Tinsley*, 868 A.2d at 873, the defendant's family and

friends are the people who have the strongest interest or concern in the handling of the defendant's trial and their attendance perhaps best serves the purpose of the Sixth Amendment guarantee. In fact, in some cases, members of the defendant's family or friends may be the only spectators, which would make a "partial" closure under those circumstances a *de facto* total closure. Because the defendant's interest in an open trial is implicated in a partial closure as well as a total closure and Maryland courts strongly favor a presumption of openness with regard to all trials, we will not, and clearly should not, modify or lessen the United States Supreme Court's standard for evaluating closures. *See Tharp v. State,* 362 Md. 77, 120–21, 763 A.2d 151, 174 (2000).

The "overriding interest" test is the substantive core of the *Waller* standard. The other three prongs of the *Waller* test address procedural issues—the scope of closure, additional factors the trial judge must consider, and the findings the trial judge must make to support the closure. Although *Waller* addressed a total closure of a suppression hearing to the public, the defendant's interest in openness is nonetheless implicated in both a partial and a total closure. For this reason, we shall continue to apply the United States Supreme Court's substantive standard, as articulated in *Waller,* to partial closures as well as total closures. Thus, we decline to apply the less stringent "substantial reason" standard when evaluating partial courtroom closures. We therefore hold that the standard announced by the United States Supreme Court in *Waller,* requiring that the party requesting closure demonstrate an overriding interest that will likely be prejudiced if the hearing is not closed, applies to both total and partial courtroom closures.

Further, we adopt the reasoning of the District of Columbia Court of Appeals, in *Tinsley,* that "we are not persuaded that the distinction between a 'substantial reason' and an 'overriding interest' is a particularly meaningful one" because " 'a word like 'overriding' is really not a calibrated measure of the gravity of an interest; [rather,] it reflects a conclusion that a particular interest ... is sufficient to justify the degree of

closure sought.'" *Tinsley*, 868 A.2d at 874 (quoting *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir.1997) (en banc)). Accordingly, "the sensible course is for the trial judge to recognize that open trials are strongly favored, to require persuasive evidence of serious risk to an important interest in ordering any closure, and to realize that the more extensive the closure requested, the greater must be the gravity of the required interest." *Id.* In other words, "overriding" is a relative term, and whether the advanced interest is "overriding" depends on the extent to which the defendant's right to an open trial is burdened.[9]

In our view, the problem with adopting a "substantial reason" test is that any less stringent or relaxed standard fails to adequately protect the defendant's interest in an open trial. The *Waller* test, in requiring an overriding interest, demands by definition that the State's interest in closure outweigh the burden on the defendant's right to a public trial. By contrast, an interest may be "substantial" but also less important than the burden on the defendant's right to an open trial. By maintaining the *Waller* standard of overriding interest, we ensure that the interest advanced in favor of closure will outweigh the defendant's right to openness in every closure, whether full, temporary, or partial. Further, by applying the *Waller* standard to partial courtroom closures, we guarantee that courtroom closures comport with the requirements of the

---

**9.** We can assume that the State has a compelling interest in promoting the safety and security of its witnesses and in assuring that witnesses who testify are free from intimidation or retaliation. Accordingly, "[i]n some instances, the safety of a witness will certainly be an overriding interest, especially in cases involving ... witnesses whose lives have been threatened." *Ip v. Henderson*, 710 F.Supp. 915, 918. Thus, where evidence of witness intimidation or threats of intimidation are presented to the court, findings by the trial judge of threats of intimidation would ordinarily constitute an overriding interest justifying courtroom closure, provided the court complied with the other *Waller* factors. Therefore, the State's interest in assuring witness safety and freedom from intimidation would constitute both an overriding interest and a substantial reason for closure. Accordingly, there would be no logical reason to impose a different standard in evaluating the propriety of the closure merely because the closure was partial or limited as in the present case.

Sixth Amendment, as announced by the United States Supreme Court in *Waller*, and ensure that Maryland courts comply with the constitutionally mandated standard.

## IV.

### Application of the *Waller* Factors to a Motion to Exclude Two Spectators from the Courtroom During the Testimony of a Key Prosecution Witness

To decide whether the trial court properly granted the State's motion to exclude Myers and Norris, we apply the four *Waller* factors to the facts of this case and determine whether the State, as the moving party, met its burden of proof in establishing an overriding interest in closure.

### Overriding Interest Likely to be Prejudiced

A witness's legitimate fear of testifying in open court, or the witness's legitimate fear of testifying in front of specific individuals in the courtroom, may present an overriding interest in the partial closure of the courtroom. *See Tinsley*, 868 A.2d at 875; *Markham v. State*, 189 Md.App. 140, 155, 984 A.2d 262, 271 (2009) (recognizing the seriousness of witness intimidation and the State's interest in securing testimony without the influence of intimidation); *Feazell v. State*, 111 Nev. 1446, 906 P.2d 727, 729 (1995) (noting that the safety of eyewitnesses qualifies as a substantial reason and an overriding interest justifying partial closure of a trial); *See also State v. Mahkuk*, 736 N.W.2d 675, 685 (Minn.2007); *People v. Frost*, 100 N.Y.2d 129, 760 N.Y.S.2d 753, 790 N.E.2d 1182, 1188 (2003). The State has an important interest not only in protecting witnesses from potential harm, but also in protecting the integrity of judicial proceedings. *See Markham*, 189 Md.App. at 152, 984 A.2d at 269. The State's interest in protecting the integrity of the judicial proceedings is likely to be prejudiced if the witness changes his or her testimony, or becomes resistant to testifying, because of fear or intimidation. *See Tinsley*, 868 A.2d at 870–71 (upholding exclusion of specta-

tors when the witness became evasive while testifying and indicated nervousness).

In the present case, the dispute does not turn on whether witness intimidation could be an overriding interest, but rather on whether the State sufficiently proved that intimidation occurred and would have caused the witness to change her testimony in this case. Longus argues that the State failed to show an overriding interest warranting closure. In Longus's view, the State did not allege that Myers or Norris threatened the witness. Rather, the State only alleged that Myers and Norris facilitated Longus's communications with the witness. Also, although the witness was slow in making her way into the courtroom, the witness was present and testified in the case. According to Longus, the witness's presence and willingness to take the stand indicates that Myers's and Norris's presence would not have prevented her from testifying truthfully. Finally, Longus maintains that the court may not rely on a proffer from an attorney when determining whether to exclude spectators, but rather should only rely on witness testimony or other relevant evidence.

In response, the State asserts that the "extraordinary cause" for closure found by the trial judge is analogous to an overriding interest. In this case, according to the State, Wise's reluctance to enter the courtroom supported the trial judge's decision to exclude Myers and Norris. Further, the State asserts that the partial closure was narrowly tailored because it was temporary and limited to the individuals that allegedly threatened the witness. In addition, the State points out that Longus failed to advance any alternatives to the exclusion of Myers and Norris. Alternatively, the State contends that Longus conceded to its proffer when he did not dispute the facts of the proffer or request a voir dire examination of the witness.

The Court of Special Appeals, in upholding the Circuit Court's decision, pointed out that the State identified the individuals who had communicated threats or helped to communicate threats, that Longus essentially stipulated that

Goode made some sort of threats, and that Longus did not dispute the State's proffer that Myers and Norris had facilitated the defendant's communications with Wise or request a voir dire examination. *Longus,* 184 Md.App. at 691–92, 968 A.2d at 147–48. According to the Court of Special Appeals, although it would have been "preferable for the trial court to interview Wise on the record to ascertain the accuracy and extent of her fears," as observed by the Court of Special Appeals, an examination was not required in this case. *Longus,* 184 Md.App. at 692, 968 A.2d at 147–48. The trial court's observation of Wise's demeanor, combined with the proffer, was sufficient, in the intermediate appellate court's view. *Id.* Further, according to the intermediate appellate court, the State's proffer contained specific information about threats or intimidation, not vague allegations of threats, which was undisputed by Longus. *Id.* In addition, the Court of Special Appeals considered Wise's testimony about her fear of Myers and Norris. Wise's testimony about her fear, although given before any other testimony, was given after the trial judge ruled on the motion to exclude. Nonetheless, the intermediate appellate court opined that the trial judge could have readmitted Myers and Norris if he were not persuaded by Wise's testimony. *Longus,* 184 Md.App. at 693, 968 A.2d at 148. Thus, the court concluded that, in light of the information available to the trial court, the State had advanced "at least a substantial reason for the partial courtroom closure," which was no broader than necessary to protect the interest in question. *Longus,* 184 Md.App. at 696, 968 A.2d at 150.

At the outset, we note that the Court of Special Appeals erred in relying on Wise's testimony, which was given after the spectators were removed from the courtroom. We have said that "[a]n appellate court may not provide a *post hoc* rationale for why the trial judge would have closed the trial" based on information presented to the trial judge after the closure. *Carter,* 356 Md. at 221, 738 A.2d at 878 (explaining the decision not to rely on questioning of the witness on the stand after the courtroom was cleared). We consider only the information available to the trial judge when ruling on the

motion, which in this case included the State's proffer and the specific factual allegations contained therein; Longus's responses to the State's motion to exclude Goode, Myers, and Norris, including Longus's admission that Goode's actions warranted exclusion and the acknowledgment of "displeasure [among the spectators] at [Wise's] appearance"; and the delay of approximately six minutes between the time when Wise was called to the witness stand and when Wise entered the courtroom.

"When the question is whether a constitutional right . . . has been violated," as in the present case, "the reviewing court makes its own independent constitutional appraisal, by reviewing the law and applying it to the peculiar facts of the particular case." *Jones v. State*, 343 Md. 448, 457, 682 A.2d 248, 253 (1996). We will, however, defer to the trial court's findings of fact "unless they are clearly erroneous." *Jones*, 343 Md. at 457–58, 682 A.2d at 253.

This Court and the intermediate appellate court have, in the past, been reluctant to uphold the total closure of a courtroom "on nothing more than a proffer from the State." *Carter*, 356 Md. at 220, 738 A.2d at 877; *Holt v. State*, 129 Md.App. 194, 207–08, 741 A.2d 519, 526 (1999). In *Carter*, we objected to the trial judge's failure to conduct any interviews "on the record to determine the effect of testifying in front of" the public instead of ordering a total closure of the courtroom on "nothing more than a proffer from the State." 356 Md. at 219–20, 738 A.2d at 877. We considered the absence of specific information, holding that "these general statements [were] insufficient to demonstrate an overriding state interest or overcome the presumption of openness." *Carter*, 356 Md. at 220, 738 A.2d at 877. In *Carter*, we held, "[i]n short, the court did not provide, and, indeed, could not have provided, any case-specific reason for closure." *Id.*

Similarly, in *Holt*, 129 Md.App. at 200–04, 741 A.2d at 522–24, the trial judge closed the courtroom to all spectators during the testimony of a key State's witness who was in protective custody. The basis for the closure was a proffer by

the State that the witness had overheard threats to another witness, from which the State extrapolated a concern that the witness may not testify truthfully out of fear. *Holt*, 129 Md.App. at 200–01, 741 A.2d at 522. The Court of Special Appeals held that generalized fear about people who know the defendant possibly coming after the witness will not support a closure, especially considering that the witness could not have been directly threatened because of the protective custody. *Holt*, 129 Md.App. at 207–08, 741 A.2d at 526. Further, the intermediate appellate court held that the trial court erred in clearing the courtroom without eliciting any evidentiary support from the State, in the form of testimony or direct evidence. *Id.*

The United States Court of Appeals for the Second Circuit addressed the role of proffers in determining whether spectators may be excluded in *Guzman v. Scully*, 80 F.3d 772 (1996). In *Guzman*, the State requested the exclusion of four women from the courtroom during the cross-examination of a witness. *Guzman*, 80 F.3d at 773. The State proffered that the women were related to another "antagonistic" witness and that their presence intimidated the witness to be cross-examined. *Guzman*, 80 F.3d at 773–74. The trial judge removed the women from the courtroom without any further inquiry. *Guzman*, 80 F.3d at 774. The Court of Appeals held that the trial judge violated the first *Waller* factor when it relied solely on the State's proffer without conducting any further inquiry of the witnesses, especially considering that defense counsel disputed some of the allegations made by the State. *Guzman*, 80 F.3d at 775. Further, the court held that it was improper to rely on "unsubstantiated statements of the prosecutor, rather than conducting an inquiry of the prosecution witness on whose behalf the closure request was made." *Id.*

The problem with the trial judge's reliance on the proffers in the aforementioned cases is not that the judge considered the State's proffer in rendering its decision. Rather, the common problem is twofold: first, the court relied on proffers containing generalized allegations rather than specific factual information; and second, there was no evidence supporting

the content of the proffer. Generally, the better practice is for the trial judge to interview the witness on the record, or for the parties to conduct a voir dire examination of the witness, to determine whether the witness has a legitimate fear that might affect his or her ability to testify truthfully. *See Tharp*, 362 Md. at 121, 763 A.2d at 174. The goal of this interview is to ascertain specific information about who was threatened, who made the threat, and the nature of the threat. *See Mahkuk*, 736 N.W.2d at 685.

It may, however, be appropriate to evaluate the amount of evidence required in support of the proffer and the level of findings needed to support an overriding interest in closure in light of the scope of the closure. *Drummond*, 854 N.E.2d at 1055. A proffer, standing alone with no facts to support the allegations, however, is never a sufficient basis to exclude spectators from the courtroom. *Carter*, 356 Md. at 220, 738 A.2d at 879 (holding that a trial judge's decision to close the courtroom during the testimony of a witness without making the requisite case-specific findings of fact was reversible error); *Markham*, 189 Md.App. at 156, 984 A.2d 262, 272 (holding that *Carter* mandates that where the trial court failed to make the requisite case-specific findings of fact, closure of the courtroom violated the defendant's right to a public trial). There may be circumstances, however, where the trial judge may rely on articulable facts, such as his or her observations of the demeanor or behavior of a witness or spectator, combined with a proffer explaining those facts, in ordering a partial closure of a courtroom.[10] For example, although "the

---

**10.** Under some circumstances, it is obviously unnecessary for the trial judge to conduct a voir dire examination or factual investigation beyond what is immediately apparent in the courtroom before excluding a spectator. For example, if a spectator's outburst disrupts the proceedings, the trial judge may exclude the spectator from the courtroom without violating the *Waller* standard. The court has an overriding interest in maintaining order in the courtroom and "protecting the integrity of legal proceedings," and may reasonably exclude a spectator who causes a disruption. *Robinson*, 410 Md. 91, 121–22, 976 A.2d 1072, 1090 (2009) (Greene, J. dissenting). What the trial judge may not do, however, is exclude additional spectators who did not participate in

prosecutor's assertions . . . are not evidence," *Mahkuk,* 736 N.W.2d at 685, a trial judge has the discretion to "give credence to a plausible and undisputed proffer by an officer of the court" when the proffer contains specific information about who made threats and the nature of those threats, and the trial judge directly observed factors that support the proffer, such as the witness's reluctance to testify. *Tinsley,* 868 A.2d at 876. Further, for example, if a witness is testifying and becomes evasive, and indicates that he or she is nervous, the trial judge may or may not take his or her observation of that behavior into account. *Id.*

In *Tinsley,* 868 A.2d at 870–72, after a witness became reluctant and evasive while testifying, the prosecution proffered that the witness had been attacked in her apartment, stabbed, and told not to testify. *Tinsley,* 868 A.2d at 871. The prosecutor further asserted that the witness was not certain who attacked her, but believed that the attackers were the defendant's brother and associates. *Id.* The individuals in question entered the courtroom during the witness's testimony, causing her to "clam[ ] up," in the words of the trial judge. *Tinsley,* 868 A.2d at 870. The District of Columbia Court of Appeals held that the trial court properly relied on the prosecution's proffer because the witness was clearly upset when certain spectators entered the courtroom and became reluctant to testify. Based on the available facts, "the judge . . . had a sufficient basis in her observations of [the witness]

---

the disruption based on the conduct of one spectator. Such an exclusion would fail the second prong of the *Waller* test, as the exclusion of additional spectators "indicates that the exclusion order was not narrowly tailored to address the specific problem at hand." *Robinson,* 410 Md. at 122, 976 A.2d at 1090 (Greene, J. dissenting).

In addition, in cases where the courtroom closure was inadvertent, unlike the circumstances in the present case, courts have determined that such a courtroom closure may be so limited in scope or duration that it is deemed de minimis or trivial, and not in violation of the Sixth or First Amendment guarantees to a public trial. *See Peterson v. Williams,* 85 F.3d 39, 44 (2d Cir.), *cert. denied,* 519 U.S. 878, 117 S.Ct. 202, 136 L.Ed.2d 138 (1996) (concluding that the closure was inadvertent because the public was excluded for twenty minutes, and the trial judge was not aware of the exclusion).

and the prosecutor's proffer to conclude, at the least, that [the witness] was afraid to testify truthfully in front of Tinsley's family members and their associates." *Tinsley,* 868 A.2d at 875–76.

 In the present case, the State's proffer contained specific allegations about contact between the witness, Myers, and Norris. Most of the specific allegations, however, were not of threats. The State alleged that Myers and Norris helped Longus make contact with the witness, but did not offer any information about what was said. The State's most serious specific allegation was that Myers and Norris relayed messages that Wise should leave town and not testify. Although this communication might have an ominous undertone, depending on the context, in this case there was no context provided to distinguish this statement as a threat rather than a misguided suggestion on evading the trial court's subpoena power.

Although the defense acknowledged that Myers and Norris were displeased at Wise's appearance in court, this does not demonstrate that Myers or Norris made any threats against Wise. Further, even if the statements made by Myers and Norris were implied threats, there is no indication that Myers or Norris threatened to act in any way. Rather, if the statements were implied threats, the source of any threat, apparently, was Longus. The State did not allege that Myers or Norris threatened to act on Longus's behalf, but rather that Myers and Norris put Longus in touch with the witness, or delivered messages to the witness from Longus. Similarly, an admission of wrongdoing by Goode, by not opposing Goode's exclusion, does not taint Myers or Norris. Although Wise was delayed in entering the courtroom, there was insufficient specific information of threats to show that her delay was due to her fear of testifying, or that she would have been unwilling or unable to testify if Myers or Norris remained in the courtroom.

Finally, based on the trial transcript, the trial judge clearly acted prematurely in removing the spectators, without the

State establishing a basis to do so. The trial judge accepted the State's proffer without determining whether there was a sufficient factual basis supporting the proffer. Instead of excluding the spectators, the judge could have conducted a hearing, allowed the parties to conduct a *voir dire* examination of the witness to establish whether the witness had a legitimate fear of the spectators that might influence her testimony, or the judge could have interviewed the witness *in camera*. What the trial judge may not do, however, is exclude spectators from the courtroom based on an unsupported proffer from the State.

Further, it does not appear that Longus was afforded an opportunity to respond to the specific factual allegations proffered by the State before the trial judge ruled on the motion to exclude Myers and Norris. The transcript of the proceedings reflects that, initially, after the jury was selected and sworn, the State made a motion to exclude spectators on the ground that "[t]here has been a significant amount of almost witness intimidation[.]" The trial judge held the matter under advisement. When Lindsay Wise was called to testify, the State renewed its motion, supported by general allegations about threats from Myers and Norris. The trial judge then asked Longus to respond. Longus opposed the State's motion, giving a general response to the State's allegations. Subsequently, trial judge asked the State to provide any further basis for the exclusion of Myers and Norris, after which the State offered specific factual allegations about the reason for exclusion. Essentially, the State pointed out that prior to trial there had been conversations between Longus and Lindsay Wise, initiated by Longus, and facilitated by Myers and Norris. In addition, the State asserted that Longus had Meyers relay to Wise "comments about [Wise] needing to leave town and not to testify." At that point, the trial judge ruled on the motion, but, before affording Longus an opportunity to respond to those specific factual allegations. The trial judge, in ruling on the motion, stated that "in order to move things along it is sometimes necessary to restrict movement into the courtroom and the presence of certain

people under the circumstances." Further, the trial judge said, "I find that there is extraordinary cause to grant the request of the State[,]" and excluded the spectators from the courtroom during the testimony of Lindsay Wise.

At a minimum, the trial judge should have afforded Longus an opportunity to respond to the specific facts proffered by the State before ruling on the motion, or conducted an evidentiary hearing. Thus, for the foregoing reasons, we hold that the State did not present an overriding reason, in support of partial closure, that was likely to be prejudiced, and therefore the trial judge abused his discretion in excluding Myers and Norris from the courtroom, in violation of Longus's Sixth Amendment right to a public trial. *See Pasteur v. Skevofilax,* 396 Md. 405, 433, 914 A.2d 113, 130 (2007) (noting that "where the record so reveals, a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion").

### Scope of Closure

In the case of intimidation, it may be proper to limit closure only to the testimony of the witness who expressed fear, or only to exclude the individuals who presented the threat, or both. *Frost,* 760 N.Y.S.2d 753, 790 N.E.2d at 1188. In the present case, the only individuals excluded were those who allegedly had contact with the witness. Had the State proved an overriding interest in closure that was likely to be prejudiced, the closure would have been sufficiently limited in scope because only the individuals allegedly involved in the creation of the threat were excluded.

### Consideration of Less Restrictive Options

Even if the trial judge fails to exhaustively state and dismiss a list of alternatives, this is not an error "where the record was sufficient to support closure of the courtroom and where defense counsel did not advocate for any less restrictive options." *Frost,* 760 N.Y.S.2d 753, 790 N.E.2d at 1188. We note that, in this case, defense counsel did not present any less restrictive alternatives to closure to the trial

judge. Notwithstanding, "trial courts are required to consider the alternatives to closure even when they are not offered by the parties." *Presley,* —— U.S. at ——, 130 S.Ct. at 724, 175 L.Ed.2d at 681.

We distinguish, however, defense counsel's option to advocate a less restrictive alternative from defense counsel's failure to request a *voir dire* of the witness. We reject the Court of Special Appeals' assertion that Longus conceded to the State's proffer by failing to request a voir dire examination of the witness. Presenting evidence in support of the State's overriding interest in closure is the State's burden. *Waller,* 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. The defense is not required to ask the State to meet its burden, and the defense's failure to request a *voir dire* examination of the witness does not waive or reduce the State's burden. *See Tinsley,* 868 A.2d at 883–84 (holding that, although Tinsley did not make a specific argument about overbreadth of the closure at trial, objecting to the closure put the prosecutor and the trial court "on notice of his basic claim that the order of exclusion was not justified" and preserved the issue for review).

### Findings on the Record

In this case, Longus did not dispute that the trial judge made findings on the record about why Myers and Norris were excluded and the factors on which the trial judge relied in making the decision. The trial judge's findings, however, did not adequately support closure based upon an overriding interest that was likely to be prejudiced and the court never made findings of fact utilizing the appropriate standard. The express purpose of the requirement that the court make findings adequate to support closure allows the "reviewing court [to] determine whether the closure order was properly entered." *Waller,* 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 38 (citations omitted). On the basis of the record before us, we conclude that the order was not properly entered.

## V.

### Remedy

 The denial of the constitutional right to a public trial is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Watters v. State*, 328 Md. 38, 48, 612 A.2d 1288, 1293 (1992) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991)). Accordingly, the harmless error analysis does not apply when a defendant's right to a public trial is violated. Prejudice is presumed when a the right to a public trial is infringed. *Waller*, 467 U.S. at 49–50, 104 S.Ct. at 2217, 81 L.Ed.2d at 40; *Watters*, 328 Md. at 49, 612 A.2d at 1293.

 The appropriate remedy for a violation of the right to an open trial is to remand for the purpose of conducting a new trial. *Carter*, 356 Md. at 224–25, 738 A.2d at 880.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION. WASHINGTON COUNTY TO PAY THE COSTS.**

HARRELL, J., concurs and dissents.

BATTAGLIA, MURPHY and ADKINS, JJ., dissent.

HARRELL, J., concurring and dissenting.

 Although I agree with Judge Murphy's dissent insofar as it prefers the "substantial reason" test to the "overriding interest" test, I join the judgment of the Majority opinion because, on this record, the State failed to meet its burden to demonstrate a substantial reason to exclude Norris, if not Myers also, solely by proffer of the prosecutor. Maj. op. at 455, 7 A.3d at 77. Even if the modality of a proffer was a

proper means to place the facts before the trial judge in these circumstances, the substance of the proffer here was inadequate. Maj. op. at 461, 7 A.3d at 80–81. Wise's *post hoc* testimony, given after the closure was ordered, should not be considered in this analysis. Maj. op. at 456–57, 7 A.3d at 78.

For these reasons, I join the judgment of the Majority opinion.

MURPHY, J., dissenting.

For the reasons stated by the Court of Special Appeals in *Longus v. State,* 184 Md.App. 680, 968 A.2d 140 (2009), I am persuaded that the "substantial reason" test, rather than the "overriding interest" test, should be applied to the *partial* courtroom closure that is at issue in the case at bar, in which only three people on the planet were excluded from the courtroom during the testimony of one witness. When Petitioner's trial counsel did "not argue with respect to [the State's request that the Petitioner's father be excluded] because [the Petitioner's father] . . . may have had some involvement with communications with this witness[,]" this concession with respect to Petitioner's father makes it clear that the Circuit Court did not err or abuse its discretion in granting the State's motion for a partial closure. The only question to be decided is whether Ms. Myers and Mr. Norris should also have been excluded during Ms. Wise's testimony.

As to Ms. Myers, the prosecutor stated:

Your Honor, I can tell the court that [Ms. Myers] has facilitated phone calls from the defendant to Miss Wise so that when Miss Wise sees her phone and sees her caller I.D. she believes its Millie Myers, she answers the phone and it's the defendant. We've had that happening. We've also had communications where the defendant would tell Ms. Myers something and Ms. Myers would then pass that message along to uh this witness, specifically comments about needing to leave town and not to testify.

As to Mr. Norris, the prosecutor stated:

Your Honor, just last night there was a communication between the defendant and Ms. Wise that was actually a four-way conversation facilitated by Don–Don Norris as well as Millie Myers and her daughter, Amy.

At that point, Petitioner's trial counsel had the opportunity to object to the prosecutor's proffer and/or to request that the Circuit Court voir dire Ms. Wise. The record shows that Petitioner's trial counsel neither objected to the proffer nor requested a voir dire. Under these circumstances, I dissent from the holding that Petitioner is entitled to a new trial on the ground that Ms. Myers and Mr. Norris were also excluded from the courtroom during Ms. Wise's testimony.

Judges BATTAGLIA and ADKINS have authorized me to state that they join in this dissenting opinion.